---

CHERYL CHAMBERLAIN,

        Plaintiff,

    v.

UNITED STATES POSTAL SERVICE,
MEGAN J. BRENNAN, POSTMASTER
GENERAL, and NATIONAL
ASSOCIATION OF LETTER
CARRIERS,

        Defendants.

1:16-cv-04941-NLH-AMD
1:18-cv-01700-JBS-AMD[1]
(consolidated)

**OPINION**

---

**APPEARANCES**:

DAVID R. CASTELLANI
CASTELLANI LAW FIRM, LLC
450 TILTON ROAD
SUITE 245
NORTHFIELD, NJ 08225

    *On behalf of Plaintiff*

JESSICA ROSE O'NEILL
OFFICE OF THE U.S. ATTORNEY
DISTRICT OF NEW JERSEY
401 MARKET STREET
4TH FLOOR
P.O. BOX 2098
CAMDEN, NJ 08101

    *On behalf of USPS Defendants*

---

[1] Civil action 18-1700 was consolidated for all purposes with civil action 16-4941 on August 6, 2018. (Docket No. 57.) The first action was filed against USPS and NALC and alleges violations of labor laws. The second action was filed against Postmaster General Megan J. Brennan and alleges gender-based employment discrimination in violation of Title VII. This Opinion resolves all claims.

JOSEPH J. VITALE
PETER D. DECHIARA
COHEN WEISS & SIMON LLP
900 THIRD AVENUE
21ST FLOOR
NEW YORK, NY 10022-4869

*On behalf of National Association of Letter Carriers*

**<u>HILLMAN</u>, District Judge**

This matter concerns claims by Plaintiff against her employer, the United States Postal Service ("USPS"), the Postmaster General, Megan J. Brennan, and Plaintiff's union, National Association of Letter Carriers ("NALC"), regarding Plaintiff's termination from employment at USPS. Presently before the Court are the motions of the USPS Defendants and the union for summary judgment in their favor on all of Plaintiff's claims. For the reasons expressed below, Defendants' motions will be granted.

## <u>BACKGROUND</u>

On September 8, 2015, Plaintiff, Cheryl Chamberlain, was driving a USPS vehicle when she was involved in a motor vehicle accident. Plaintiff's driver's license had been suspended six days before for unpaid parking tickets. On September 28, 2015, USPS issued a notice of removal to Plaintiff for operating a postal vehicle without a valid driver's license.

Through her union's Local Branch 370, Plaintiff filed a grievance, which proceeded through the grievance process under the collective bargaining agreement between USPS and her union,

Defendant NALC.  On December 11, 2015, the dispute resolution team

resolved the grievance by offering Plaintiff a last-chance

agreement, which required her signature by December 24, 2015 or

she would be removed from employment with USPS.  Plaintiff signed

the agreement on December 22, 2015, and returned to work the next

day.

During the grievance process and while Plaintiff was in

suspended status, but before she signed the last-chance agreement,

Plaintiff was charged with driving while intoxicated.  On November

4, 2015, she pleaded guilty to the charge, which resulted in a

seven-month license suspension.  Plaintiff claims that her union

representative, Branch 370 steward Jason Ausborn, who is also a

city letter carrier,[2] advised Plaintiff not to reveal her DUI and

the seven-month license suspension to her immediate supervisors at

USPS at that time.  Plaintiff claims she followed his advice.[3]

Plaintiff alleges that a few days before she signed the last-

chance agreement, Ausborn advised Plaintiff's supervisors of her

DUI, and that Patricia Marin, Officer-in-Charge of the Atlantic

---

[2] Ausborn was a named Defendant in Plaintiff's complaint.  He was
dismissed on March 15, 2018.  (Docket No. 48, citing Carino v.
Stefan, 376 F.3d 156, 159–60 (3d Cir. 2004) ("[T]he law is clear
that individual union officers are not personally liable to third
parties for actions taken on behalf of the union in the collective
bargaining process.").)

[3] As discussed in more depth below, Ausborn's view was that unless
and until USPS was willing to return Plaintiff to work, she had no
reason to inform management of her license suspension.

City office, who executed the agreement on behalf of USPS, knew of Plaintiff's license suspension when she met with Plaintiff to sign the agreement. Thus, Plaintiff alleges that when the September 28, 2015 grievance was resolved by way of the last-chance agreement, USPS knew of Plaintiff's license suspension due to the DUI. Plaintiff also claims that when she returned to work under the last-chance agreement on December 23, 2015, she informed the manager of the Margate branch, Carol Threatt, of her license suspension.

As a result of the November 4, 2015 driver's license suspension, USPS issued Plaintiff another notice of removal on January 4, 2016 for improper conduct. Plaintiff filed a grievance of that notice, and it was concluded that even though Plaintiff was not working when her license was suspended on November 4, 2015, she was still an employee of USPS and being paid, and she was therefore obligated to inform management immediately of her suspension. Plaintiff's notice of removal was upheld on February 17, 2016.[4]

Plaintiff has asserted claims against USPS for breach of the collective bargaining agreement for her improper termination. She also alleges that her termination was motivated by her gender in

---

[4] As explained below, Plaintiff's failure to immediately inform USPS management about her second driver's license suspension was one, but not the only, factor in the ultimate decision to terminate her.

violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-16(a). Plaintiff has also asserted claims against NALC for its violation of its duty of fair representation. All Defendants have moved for summary judgment in their favor. Plaintiff has opposed their motions.

**DISCUSSION**

**A.    Subject matter jurisdiction**

Plaintiff brings this action pursuant to the Postal Reorganization Act, 39 U.S.C. § l208(b), the Labor Management Relations Act, 29 U.S.C. § 301, and Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-16(a). This Court has jurisdiction over Plaintiff's claims under 28 U.S.C. § 1331.

**B.    Standard for Summary Judgment**

Summary judgment is appropriate where the Court is satisfied that the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, or interrogatory answers, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(a).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

(1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor."  Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements.  Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

C.   **Analysis**

1.   ***Plaintiff's claims against USPS and NALC for violation of the CBA and duty of fair representation***

Plaintiff's claims against USPS and NALC are considered a

6

"hybrid suit," in which an employee sues the employer under section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, for breach of the collective bargaining contract ("CBA"),[5] and the union for breach of its duty of fair representation ("DFR"), which is implied from section 9(a) of the National Labor Relations Act (the "NLRA"), 29 U.S.C. § 159(a). Vadino v. A. Valey Engineers, 903 F.2d 253, 260 (3d Cir. 1990). The "Supreme Court has viewed the hybrid suit as consisting of two independent, albeit related, causes of action, and has stated that '[t]he employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both.'" Id. (quoting DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151, 165 (1983), and citing United Parcel Service, Inc. v. Mitchell, 451 U.S. 56, 73 n.2 (1981)).  To prevail against the employer, the union, or both, the employee "must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union." DelCostello, 462 U.S. at 165 (citation omitted).

---

[5] USPS is not an "employer" within the meaning of 29 U.S.C. § 152(2) ("Definitions" section of NLRA), but § 1208(b) of the Postal Reorganization Act gives the Court jurisdiction over this claim against USPS.  39 U.S.C. § 1208(b) ("Suits for violation of contracts between the Postal Service and a labor organization representing Postal Service employees, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy.").

Thus, in order to be successful on her breach of CBA claim against USPS, Plaintiff must also show that NALC breached its DFR. The same holds true for Plaintiff's DFR claim against NALC – to be successful on that claim, Plaintiff must also prove that USPS breached the CBA. Failure to prove one claim is fatal to Plaintiff's hybrid suit against both. See <u>Ahmad v. United Parcel Service</u>, 281 F. App'x 102, 104 (3d Cir. 2008) (citing <u>Felice v. Sever</u>, 985 F.2d 1221, 1226 (3d Cir. 1993) (explaining in a § 301 hybrid action, "the plaintiff will have to prove that the employer breached the collective bargaining agreement in order to prevail on the breach of duty of fair representation claim against the union, and vice versa")).

### a. Plaintiff's breach of CBA claim against USPS

The relationship between letter carriers such as Plaintiff and USPS is governed by a CBA called the National Association of Letter Carriers National Agreement ("National Agreement"). NALC negotiates that agreement with USPS and makes it available to its members. The National Agreement establishes a binding grievance procedure consisting of multiple steps: informal (Step A), formal (Step A), and a final stage entailing submission of the grievance to a "Step B" team.

The Step B team, which is composed of one member from NALC and one member from USPS management, considers the submissions of both sides. If the two members of the Step B team agree, they

issue a binding decision that resolves the grievance.  Given the
binding nature, there can be no appeal and no further ability to
proceed to arbitration.  If the Step B team does not agree on the
resolution and is at an impasse, then further process, including
arbitration, is potentially available to either side.  As set
forth in Article 16 of the National Agreement, USPS is permitted
to remove an employee for "just cause," which includes a
"violation of the terms of this Agreement."

The timeline of events leading to Plaintiff's termination is
as follows.  In 2015, Plaintiff was assigned to the United States
Post Office in Margate, New Jersey, and specifically assigned to a
driving route delivering mail.  On September 8, 2015, Plaintiff
was involved in a rear-end motor vehicle accident while driving a
USPS vehicle.  Plaintiff had deviated from her route to go to a
convenience store without authorization and ran into the back of a
privately owned vehicle.

The manager of the Margate branch, Carol Threatt, and a
police officer arrived at the scene, and the officer informed
Plaintiff and Threatt that Plaintiff's driver's license was
suspended.  The suspension, which was effective as of September 2,
2015, had arisen from an unpaid parking ticket issued in Ocean
City, New Jersey on May 24, 2015.  The Ocean City Municipal Court
sent Plaintiff notices in addition to the original ticket on June
23, 2015 and July 25, 2015 informing her that if she did not pay

the ticket, her license would be suspended.  Plaintiff had called the Ocean City Municipal Court the morning of the accident in efforts to make arrangements to pay the ticket, and she admitted she was aware her license had been suspended.  Later that day or the next, Plaintiff was placed on administrative leave with pay, and Plaintiff paid the restoration fee and had her New Jersey driver's license restored.

On September 21, 2015, Plaintiff appeared in Margate Municipal Court and pled guilty to Operating without a License/Unlicensed Driver as a result of the September 8, 2015 accident.  On September 25, 2015, USPS issued Plaintiff a notice of removal, which was signed by Threatt and Patricia Marin, Officer-in-Charge of the Atlantic City office, which covers the Margate branch office.  The notice of removal charged Plaintiff with improper conduct based on her operation of a postal vehicle without a valid driver's license and her failure to inform her management that her driver's license was suspended under Article 29 of the CBA.  It stated that Plaintiff operated her postal vehicle on multiple days, delivering mail, without notifying her immediate supervisor that she did not possess a valid driver's license.  It also noted Plaintiff's repeated attempts to deny knowledge of her driver's license suspension even after her knowledge of her suspension was confirmed by the installation head and local law enforcement, which further demonstrated Plaintiff's

lack of integrity and "quite simply renders Chamberlain unqualified to work as a FTR City Carrier."

The notice of removal further noted four other disciplinary actions issued within the prior two years:[6]

> October 24, 2014 - Letter of Warning for unsatisfactory attendance (AWOL)
>
> November 20, 2014 - 7-day suspension for unsatisfactory job performance
>
> April 3, 2015 - 7-day suspension for unsatisfactory job performance
>
> June 10, 2015 - 14-day suspension for unsatisfactory attendance

Plaintiff asked Branch 370 to grieve the notice of removal, and on October 8, 2015, the union complied with her request. In support of the grievance, Branch 370 steward Jason Ausborn argued, among other things, that "management issued the removal without just cause" because Plaintiff was unaware at the time of the accident that her license had been suspended.

The grievance was denied at Informal Step A and Formal Step

---

[6] Plaintiff was also subject to discipline not recorded on the notice of removal. USPS issued her a fourteen-day suspension on November 18, 2011 for failure to follow instructions and improper conduct; a letter of warning on April 13, 2012 for failing to meet attendance requirements; a fourteen-day suspension on May 2, 2012 for failing to meet attendance requirements; another fourteen-day suspension on August 6, 2012 for failing to maintain regular attendance; a letter of warning on April 22, 2013 for unsatisfactory job performance; a seven-day suspension on January 31, 2014 for failure to perform assigned duties; and another seven-day suspension on February 3, 2014 for failure to satisfactorily perform assigned duties.

A, and Branch 370 appealed it to Step B. In addition to issuing her a notice of removal, USPS management offered Plaintiff the opportunity to sign a last-chance agreement, but Plaintiff refused to sign it at that time. Management also offered her a job as a custodian. Plaintiff rejected this offer.

While on administrative leave during the grievance process, on November 4, 2015, Plaintiff appeared in Upper Township Municipal Court and pled guilty to Operating Under the Influence of Liquor/Drugs arising from an August 26, 2015 summons, a date before the collision in September 2015. Plaintiff's driver's license was suspended for 210 days, and she was issued a fine of $700.00.

On December 11, 2015, the formal decision on the grievance regarding the September 25, 2015 notice of removal was issued by the Step B team pursuant to the CBA. The Step B team determined that USPS had "just cause" to issue the September 25, 2015 notice of removal, but the Step B team concluded that because local USPS management had offered Plaintiff a last-chance agreement, that offer would remain on the table until December 24, 2015.

Prior to the December 11, 2015 Step B decision, Plaintiff consulted Ausborn about her DUI and driver's license suspension. It was Ausborn's view was that unless and until USPS was going to take Plaintiff back to work, she had no reason to inform management of her license suspension. Ausborn was aware that

Article 29 of the CBA provides that "[a]n employee must inform the supervisor immediately of the revocation or suspension of such employee's State driver's license," but he had never seen that rule applied to a letter carrier who had already been issued a notice of removal from employment and was on administrative leave and no longer performing any driving or other duties for USPS. Ausborn reached out to David Napadano, who at the time was a Regional Administrative Assistant in NALC Region 12, the region that includes Branch 370, and Napadano concurred with Ausborn's view.

Ausborn advised Plaintiff not to notify her management unless and until the pending grievance associated with the September 2015 removal concluded in her favor. Plaintiff claims she followed his advice. Plaintiff does not indicate whether she consulted anyone else.

Ausborn notified Plaintiff immediately of the Step B decision. Plaintiff then agreed to sign the last-chance agreement, and as a result Ausborn told Plaintiff that USPS management should now be notified of her November 4, 2015 license suspension because she would be returning to work. Plaintiff agreed to let Ausborn notify management.

According to Ausborn, he informed Marin about Plaintiff's second license suspension prior to Plaintiff signing the last chance agreement. Marin disputes that Ausborn told her about the

suspension.  As set forth in more detail below, while there is
some dispute as to what Ausborn told Marin, the dispute is not as
stark as Plaintiff portrays it and to the extent there is a
factual dispute at all it is not a material one precluding summary
judgment.

On December 22, 2015, Plaintiff signed the last-chance
agreement.  Plaintiff herself did not inform Threatt or anyone at
USPS of the November 4, 2015 driver's license suspension before
signing the last-chance agreement.  When Plaintiff returned to the
Margate Post Office on December 23, 2015, she had a conversation
with Threatt in which she informed Threatt that her license was
suspended.  USPS thereafter conducted a pre-disciplinary interview
("PDI") with Plaintiff.  Plaintiff did not inform management that
she was following the union's advice by not informing them of her
November 4, 2015 suspension.

On January 4, 2016, USPS issued a second notice of removal,
which was signed by Threatt and Marin.  It found that Plaintiff's
admitted failure to notify management of her November 4, 2015
license suspension was inconsistent with the last-chance
agreement, and violated Article 29.  The notice found that
Plaintiff was aware of her obligation to report the suspension and
that she again failed to report her license suspension to USPS
management.  The notice also noted her past record of discipline.

The union filed a grievance, which followed the CBA's

grievance process. The Step B dispute resolution team issued its unanimous decision on February 17, 2016, finding:

> Our review of the file indicates the grievant failed once again to inform management as required that her state driver's license had been suspended on November 4, 2015. While the grievant was not working as she was awaiting the outcome of a grievance filed for another Notice of Removal for a similar charge, she was still an employee of the USPS and was clearly obligated to inform management immediately of her November 4, 2015 license suspension following her arrest for driving under the influence. Despite her claims to the contrary, the very fact the grievant was off work for a similar charge indicates she was aware of that obligation.
>
> Furthermore, the fact the LCA was signed after her November 4, 2015 license suspension is irrelevant since news of the suspension was purposely being withheld. Had that significant information been available, the LCA wouldn't have been on the table. Therefore, based on the case file provided, management had just cause to issue the Notice of Removal to the grievant dated January 4, 2016 for "Improper Conduct."

The Step B decision also considered Plaintiff's disciplinary record, including that Plaintiff was working pursuant to the last-chance agreement, in issuing its decision on her grievance. Because the Step B team's decision was unanimous, pursuant to the National Agreement, NALC did not, and could not, appeal it to arbitration.

The burden of proving that USPS's actions constituted a breach of its contractual obligations under the CBA rests squarely with Plaintiff. Heffron v. Adamar of New Jersey, Inc., 270 F. Supp. 2d 562, 575 (D.N.J. 2003) (citing United Steelworkers of America, AFL–CIO–CLC v. North Bend Terminal Co., 752 F.2d 256, 261 (6th Cir. 1985) ("[T]he whole burden of proof is on the party

15

alleging breach of a collective bargaining agreement under section 301 of the [LMRA].") (other citations omitted).  The Court finds that Plaintiff has not demonstrated the requisite disputed issues of material fact on her breach of CBA claim against USPS to defeat USPS's motion for summary judgment.

Plaintiff presents three arguments to support her claim that USPS breached the CBA.  First, Plaintiff argues that USPS breached the CBA because it did not terminate her for "just cause" as required under the CBA.  Plaintiff's first notice of removal on September 24, 2015 and her second notice of removal on January 4, 2016, disciplined Plaintiff pursuant to Article 16 and Article 29 in the CBA.  Article 16 provides in relevant part, "In the administration of this Article, a basic principle shall be that discipline should be corrective in nature, rather than punitive.  No employee may be disciplined or discharged except for just cause, such as, but not limited to, insubordination, pilferage, intoxication (drugs or alcohol), incompetence, failure to perform work as requested, violation of the terms of this Agreement, or failure to observe safety rules and regulations."  Article 29 of the CBA provides in relevant part that "[a]n employee must inform the supervisor immediately of the revocation or suspension of such employee's State driver's license."

Plaintiff argues that "just cause" does not support her termination because her union representative, Jason Ausborn, told

16

Patricia Marin, Officer-in-Charge of the Atlantic City office, which covers the Margate branch office, of Plaintiff's November 5, 2015 DUI license suspension prior to Plaintiff signing the last-chance agreement on December 22, 2015.  Plaintiff argues that even though Marin disputes that Ausborn told her this information, Marin testified that if she had been aware of the second license suspension prior to Plaintiff signing the last-chance agreement, Plaintiff would not have been terminated.  Plaintiff contends that this disputed fact as to whether Plaintiff failed to "immediately inform the supervisor" of her license suspension, which was the basis for her "just cause" termination, warrants the denial of summary judgment.

The problem with this argument is three-fold.  One, Marin did not testify as described by Plaintiff.  When asked whether Ausborn notified her of Plaintiff's second license suspension before Plaintiff signed the last chance agreement, Marin stated that she did not recall that conversation with him.  When asked, "Would you be surprised if he testified that he definitely notified you beforehand?", Marin answered, "Yes."  When asked, "Would it have made a difference?", Marin responded, "Yes. . . Because she would have fulfilled her responsibilities in advising us that her license was suspended before she signed the Last Chance Agreement."  Marin was then asked, "And then she would not have been disciplined or terminated?", and Marin responded, "That, I

don't know." (Docket No. 91 at 21.) Contrary to Plaintiff's representation, Marin did not affirmatively state that Plaintiff would not have been terminated if Marin knew of Plaintiff's second license suspension prior to the signing of the last chance agreement.

Second, Plaintiff admits she did not inform her supervisors or anyone at USPS directly about her November 5, 2015 license suspension until after she signed the last-chance agreement and returned to work. Thus, whether Ausborn informed USPS management is of no import, because Plaintiff, and not Ausborn, had the obligation to abide by Article 29 in the CBA. That Marin thought differently as to whether Ausborn's pre-signing notice might have been sufficient notice does not change the plain language of the CBA. The duty to notify was personal as to Plaintiff.

Third, as the second Step B decision explained, "the fact the LCA was signed after her November 4, 2015 license suspension is irrelevant since news of the suspension was purposely being withheld. Had that significant information been available, the LCA wouldn't have been on the table." Thus, timing is important. It is clear from the record that if Plaintiff had informed USPS of her second license suspension as it happened, Plaintiff would not have been offered a last-chance agreement at all.

This analysis also negates Plaintiff's second argument that USPS violated the CBA because the CBA failed to provide a

definition of "immediate" in Article 29. Plaintiff argues that

Ausborn's notification to Marin of her second license suspension

qualifies as "immediate." Plaintiff also argues that Plaintiff

informing her branch manager, Threatt, of her second license

suspension on her first day back at work pursuant to the last

chance agreement qualifies as "immediate."

The Court has no difficulty determining as a matter of law

that waiting seven weeks does not qualify as immediate

notification within the fair meaning of either the word or

agreement.[7] This is especially so since it is obvious that

Plaintiff withheld the suspension for fear it would torpedo any

---

[7] See Morro v. DGMB Casino LLC, 112 F. Supp. 3d 260, 277 (D.N.J. 2015) (quoting Contrans, Inc. v. Ryder Truck Rental, Inc., 836 F.2d 163, 169 (3d Cir. 1987)) (other citation omitted) (rejecting as a matter of law the plaintiff's argument that a provision in a CBA should be given no effect, and noting, "a contract should be read so as to give meaning to all of its terms when read as an entirety"); Utility Workers Union of America, Local 601 v. Public Service Elec. and Gas Co., 2009 WL 331421, at *8 (D.N.J. 2009) (citing Teamsters Indus. Employees Welfare Fund v. Rolls-Royce Motor Cars, Inc., 989 F.2d 132, 135 (3d Cir. 1993) and Bethlehem Steel Corp. v. United States, 270 F.3d 135, 139 (3d Cir. 2001) ("As the CBA is an agreement between PSE&G and the Union, its meaning should be construed using contract principles. Where the terms of a contract are clear and unambiguous, it is proper for the court to determine the contract's meaning as a matter of law."); Passaic County Bd. of Social Services v. Communications Workers of America, AFL-CIO, 2007 WL 1827245, at *4 (N.J. Super. Ct. App. Div. 2007) (citing M.J. Paquet, Inc. v. New Jersey Dept. of Transp., 794 A.2d 141, 152 (N.J. 2002) (other citations omitted) (explaining that a contract, such as a CBA, is a legal issue for the court to decide in the first instance, and contract terms are to be given their plain and ordinary meaning in accord with justice and common sense and the probable intention of the parties).

chance of her reinstatement and authorizing Ausborn's disclosure
and making her own disclosure only after the USPS had committed to
the last-chance agreement. Plaintiff attempted to game the
grievance process, not act in good faith compliance with the CBA.

Even if this construction is wrong, the second driver's
license suspension was not the sole factor in her termination.
The first and second notices of removal documented Plaintiff's
noncompliance with Article 29, but they also considered
Plaintiff's disciplinary history over the previous two years as a
factor in her termination. Plaintiff focuses solely on USPS's
view of how her driver's license suspensions violated the CBA, but
she fails to address these other reasons cited to support her
termination and explain how these reasons do not provide an
adequate and independent basis for the termination. See Article
16, Section 1 ("No employee may be disciplined or discharged
except for just cause such as, but not limited to,
insubordination, pilferage, intoxication (drugs or alcohol),
incompetence, failure to perform work as requested, violation of
the terms of this Agreement, or failure to observe safety rules
and regulations."); Article 16, Section 10 (inferring that the
disciplinary records for the prior two years may be considered in
an employee's disciplinary action: "The records of a disciplinary
action against an employee shall not be considered in any
subsequent disciplinary action if there has been no disciplinary

action initiated against the employee for a period of two years."); see, e.g., Professional Emergency Medical Services Ass'n of New Jersey, IAFF Local 4610, PFANJ, AFL-CIO v. Monmouth Ocean Hosp. Services Corp., 2015 WL 4024386, at *6 (D.N.J. 2015), aff'd, 680 F. App'x 100 (3d Cir. 2017) (noting that the CBA provided that the accrual of twelve or more active disciplinary units resulted in termination of employment, and it was undisputed by that the employee accumulated twelve or more disciplinary units, and granting summary judgment to the employer on the employee's claim that his termination violated the CBA because all of the union's asserted reasons in support of its position that just cause was lacking did not negate the employee's accumulation of disciplinary units, and they also did not negate an additional, independent basis for termination regarding the employee's fault with regard to an accident).

Plaintiff finally argues that USPS breached the CBA because it did not comply with Article 29's requirement that "every reasonable effort will be made to reassign the employee in non-driving duties in the employee's craft or other crafts." Plaintiff argues that she was terminated rather than reassigned in violation of this requirement, which demonstrates a disputed issue of material fact that must go to a jury.

This argument is also without merit. Other than Plaintiff's conclusory statement that she should have been afforded a non-

driving job alternative based solely on the language of Article 29, Plaintiff cites to no record evidence to support the viability of this option. Plaintiff fails to address USPS's offer in September 2015 during the grievance of her first notice of removal that Plaintiff serve as a custodian, which she rejected. Plaintiff further fails to mention that in January 2016 before the issuance of the second Step B decision the Margate branch attempted to provide alternative work that did not involve driving, but not enough work was available.

Moreover, as stated before, Plaintiff's termination was not solely based on the license suspension issue but also multiple prior disciplinary actions that did not trigger the alternative work option. Thus, Plaintiff has not provided any support for her argument that USPS failed to provide her with alternative work in violation of the CBA.

In sum, Plaintiff has failed to present disputed issues of material fact to support her claim that USPS violated the CBA. USPS is entitled to summary judgment in its favor on Plaintiff's breach of contract claim.

### b. Plaintiff's breach of DFR claim against NALC

Because the Court has determined that Plaintiff has failed to support her CBA violation claim against USPS, Plaintiff's claim against NALC also fails. Ahmad, 281 F. App'x at 104 (explaining that a plaintiff's failure to prove one claim against her employer

is fatal to a plaintiff's hybrid suit against her employer and union). NALC is therefore entitled to summary judgment in its favor on Plaintiff's claim that NALC breached its duty to provide her with fair representation. The Court will briefly address Plaintiff's DFR claim, however, in the posture of whether it would be viable if Plaintiff had been successful on her breach of CBA claim against USPS.

Plaintiff has the burden of showing that NALC breached its DFR to Plaintiff. DelCostello, 462 U.S. at 165. A union is authorized to act as the exclusive bargaining agent for its members, and it has a duty to provide fair representation in the negotiation, administration, and enforcement of the collective bargaining agreement. Findley v. Jones Motor Freight, Division Allegheny Corp., 639 F.2d 953, 957 (3d Cir. 1981) (citing Vaca v. Sipes, 386 U.S. 171, 190 (1967)). A breach of that duty occurs when a union's conduct toward a member is "arbitrary, discriminatory, or in bad faith." Id. The union must be accorded a "wide range of reasonableness" to enable it to perform effectively, but this discretion is subject to good faith and honesty of purpose." Id. (quoting Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 563-64 (1976) (citations omitted)).

Plaintiff argues that NALC violated its DFR when (1) it provided her with "bad advice" - i.e., advising her not to inform USPS of her November 4, 2015 driver's license suspension, and (2)

it failed to tell USPS during the grievance process that the reason Plaintiff did not inform USPS of her second license suspension was based on the advice of NALC.

NALC argues that the duty of fair representation is not applicable to these circumstances because it is a broader duty that arises in its obligations to negotiate with the employer on behalf of employees to enforce a CBA, and not where the union is merely providing advice to an individual employee. NALC further argues that even if the DFR applied in this situation, Plaintiff made her own choice to rely on advice she was not obligated to follow.

NALC also contends that regardless of whether the union's advice was "bad," its agent acted in good faith and with Plaintiff's best interests in mind. NALC argues that at every step of the way the union, through Ausborn, vigorously and comprehensively advocated for Plaintiff and facilitated the entire grievance processes on both notices of removal. NALC points out that it helped facilitate Plaintiff's last-chance agreement, and it had successfully reduced the penalties of several of Plaintiff's prior disciplinary actions.

Finally, NALC contends that Ausborn's failure to argue that he caused the delay in Plaintiff not reporting the November 4, 2015 license suspension "immediately" during the grievance process does not demonstrate bad faith because he cannot be faulted for

raising a novel argument he had never made on behalf of a union member before. Moreover, NALC contends that it cannot be faulted for failing to make that argument when Plaintiff herself admits she never raised NALC's advice as a defense.

The Court is not convinced that the union's "bad advice" in this context rises to the level of a DFR violation. The Court need not resolve that issue, however, because as discussed at length above, Plaintiff's two notices of removal and termination were not based solely on the Article 29 violations, but also several prior disciplinary actions, including the fact that Plaintiff had returned to work under a last-chance agreement. NALC's advice, while ultimately ill-advised, was not the reason USPS terminated Plaintiff. Indeed, the Step B team explicitly noted that even if Plaintiff had informed USPS of her November 4, 2015 suspension prior to her signing the last-chance agreement, that agreement would have been rescinded.

The purpose of the last-chance agreement was to provide Plaintiff "with a firm choice between rehabilitation and removal," and that "any failure to adhere to these provisions will result in removal." One provision in the last-chance agreement was that Plaintiff "follow all rules and regulations involving safety" and "follow all Postal regulations." As a result of her first notice of removal, Plaintiff was well aware of her obligation under the CBA to inform USPS of a driver's license suspension. It is

undisputed that regardless of the reasons behind her decision to withhold from USPS the information regarding her November 4, 2015 driver's license suspension, Plaintiff herself never informed USPS of the license suspension until after she signed the last-chance agreement and returned to work.  It was Plaintiff's obligation, not NALC's, to do so.

Consequently, even if the Court did not find that USPS had "just cause" to terminate Plaintiff's employment in violation of the CBA, Plaintiff's hybrid claim would still fail.  The undisputed evidence shows that the union's "bad advice" and its failure to share during the grievance process that it had provided such advice to Plaintiff did not cause her injury - i.e., termination - which is a required element of her breach of DFR claim against the union.  See International Broth. of Elec. Workers v. Foust, 442 U.S. 42, 48-49 (1979)  ("The fundamental purpose of unfair representation suits is to compensate for injuries caused by violations of employees' rights."); see also Bowen v. U.S. Postal Service, 459 U.S. 212, 218 (1983) (citing Vaca v. Sipes, 386 U.S. 171, 197 (1967)) (explaining that an employee who proves that his employer violated the labor agreement and his union breached its duty of fair representation may be entitled to recover damages from both the union and the employer, apportioned according to fault).

Instead, the undisputed evidence shows that it was

Plaintiff's lack of candor surrounding her first driver's license suspension, the sheer existence of - and not necessarily her failure to reveal - her second driver's license suspension, and her numerous other disciplinary actions that served as the basis for the unanimous Step B determination that upheld her termination.  NALC is entitled to summary judgment in its favor on Plaintiff's breach of the duty of fair representation claim against it.

### 2. *Plaintiff's Title VII claim against USPS*

Plaintiff claims that she was terminated because she is female.[8]  Under Title VII, it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex."  42 U.S.C. § 2000e-2(a)(1).

To establish a *prima facie* case of sex discrimination under Title VII, a plaintiff must first establish that: (1) she is a member of a protected class; (2) she was qualified for the

---

[8] Plaintiff claims she was discriminated against because of her gender, which is female.  Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., only refers to a person's "sex," not "gender": employers are prohibited from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  The Court construes Plaintiff's Title VII discrimination claim to be based on her sex.

position in question; (3) she suffered an adverse employment action; and (4) that adverse employment action gives rise to an inference of unlawful discrimination.  *Tourtellotte v. Eli Lilly and Co.*, 636 F. App'x 831, 842 (3d Cir. 2016) (citing *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410–11 (3d Cir. 1999)) (other citations omitted).

A plaintiff can prove her discrimination claims through direct or circumstantial evidence.  Under the framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the plaintiff must first establish a *prima facie* case of discrimination, which creates an inference of unlawful discrimination.  *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643–45 (3d Cir. 2015).  Once the plaintiff has successfully established a *prima facie* case creating an inference of discrimination, the burden shifts to the employer who must articulate a legitimate nondiscriminatory reason for the adverse employment action.  *Id.* (citations omitted).  This second step of *McDonnell Douglas* does not require that the employer prove that the articulated legitimate, nondiscriminatory reason was the actual reason for the adverse employment action, but instead the employer must provide evidence that will allow the factfinder to determine that the decision was made for nondiscriminatory reasons.  *Id.* (citations omitted).

If the employer satisfies this second step, the burden shifts

back once more to the plaintiff to show, by a preponderance of the
evidence, that the employer's proffered legitimate,
nondiscriminatory reason was pretextual – that not only was the
employer's proffered reason false, but the real reason was
impermissible discrimination.  Id.  This can be done in two ways:
(1) by pointing to evidence that would allow a factfinder to
disbelieve the employer's reason for the adverse employment action
by showing such weaknesses, implausibilities, inconsistencies,
incoherencies, or contradictions in the employer's proffered
legitimate reasons, or (2) by pointing to evidence that would
allow a factfinder to believe that an invidious discriminatory
reason was more likely than not a motivating or determinative
cause of the employer's action, which can be shown by (1) the
defendant having previously discriminated against the plaintiff;
(2) the defendant having discriminated against others within the
plaintiff's protected class; or (3) the defendant has treated
similarly situated, male individuals more favorably.  Id.
(citations and quotations omitted).

Plaintiff argues that six male USPS employees in the Atlantic
City region whose driver's licenses had been suspended for DUI but
were ultimately treated differently from Plaintiff prove she was
terminated because of her sex, rather than the articulated reasons
that Plaintiff failed to abide by Article 29 in the CBA and had
several other disciplinary issues.

Even accepting that Plaintiff has established her *prima facie* case, Plaintiff has failed to show that Defendant's proffered non-discriminatory reason for her termination was pretextual. More specifically, Plaintiff's group of proffered comparators do not support Plaintiff's claim that her sex motivated USPS's termination of Plaintiff. In the context of personnel actions, the plaintiff is not required to show that she is identical to the comparator, but she must show substantial similarity. Taylor-Bray v. Delaware Dept. of Services for Children, Youth and their Families, 627 F. App'x 79, 82–83 (3d Cir. 2015) (citing Radue v. Kimberly-Clark Corp., 219 F.3d 612, 618 (7th Cir. 2000)). "Relevant factors include, but are not limited to, whether the comparators 1) had the same job description, 2) were subject to the same standards, 3) were subject to the same supervisor, and 4) had comparable experience, education, and other qualifications." Id. (quoting Salas v. Wisconsin Dep't of Corrections, 493 F.3d 913, 923 (7th Cir. 2007)).

"In determining whether similarly situated nonmembers of a protected class were treated more favorably than a member of the protected class, the focus is on the particular criteria or qualifications identified by the employer as the reason for the adverse action. . . . [T]he plaintiff must point to evidence from which a factfinder could reasonably infer that the plaintiff satisfied the criterion identified by the employer or that the

employer did not actually rely upon the stated criterion." Ewell v. NBA Properties, Inc., 94 F. Supp. 3d 612, 624–25 (D.N.J. 2015) (quoting Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 647 (3d Cir. 1998) (internal citations and quotations omitted).

Plaintiff provides scant information about her male comparators. It appears that all six had their driver's licenses suspended because of a DUI, and one, J.G., was supervised by Threatt and worked in the Margate branch. These are the only similarities between those male USPS employees and Plaintiff. As for J.G., his first DUI suspension occurred eight years before Plaintiff's, and when he received a second DUI suspension, he resigned rather than face termination. Plaintiff does not provide any information as to whether any of the six male employees failed to report their infractions "immediately," whether they had any other disciplinary issues, or what kind of discipline, if any, they faced as a result of their driver's license suspensions.

In short, other than working for USPS and having their driver's licenses suspended for DUI, Plaintiff has not provided any evidence that these six purported comparators are comparable in any way that would suggest an invidious discriminatory reason – Plaintiff's sex – was more likely than not a motivating factor in her termination. USPS is entitled to summary judgment in its favor on Plaintiff's Title VII discrimination claim.

**CONCLUSION**

Plaintiff has failed to show material issues of disputed fact to support her breach of the collective bargaining agreement claim against USPS. That finding is fatal to Plaintiff's breach of the duty of fair representation claim against NALC. But even if Plaintiff was successful on her breach of the collective bargaining claim against USPS, USPS and NALC would still be entitled to summary judgment in their favor because Plaintiff does not present material issues of disputed fact to support her breach of the duty of fair representation claim against NALC.

Plaintiff's Title VII claim also fails because she has not provided sufficient issues in material dispute as to her claim that her status as a female caused the adverse employment actions.

The motions for summary judgment filed by USPS, the Postmaster General, and NALC must be granted. An appropriate Order will be entered.


Date: __January 17, 2020__          ____s/ Noel L. Hillman____
At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.